IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2021 APR 19 AM 11:35
MARGARET BOTKINS, CLERK
CHEYENNE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 20-CR-178-ABJ |
| JERRY DARNELL DAWSON JR., | |
| Defendant. | |

## ORDER DENYING MOTION TO SUPPRESS

THIS MATTER comes before the Court on Defendant's Motion to Suppress Evidence. ECF No. 33. The Government responded on March 17, 2021. ECF No. 38. This Court held a hearing on the matter on April 12, 2021. Having reviewed the filings, testimony, applicable law, and being otherwise fully advised, the Court finds Defendant's Motion should be **DENIED**.

### BACKGROUND

On October 12, 2020 Wyoming Highway Patrol Trooper Harley Kalb pulled over Defendant for driving 92 mph in a 70-mph zone on Highway 50. ECF No. 38 at 1. Defendant was the operator of a Black Chrysler 300 sedan with an Arizona license plate. Ex. 1. Trooper Kalb testified Defendant was passing another vehicle, but Wyoming only allows drivers to go 10 mph over the speed limit to pass. Defendant was traveling with Bobby Dickerson at the time, and he had already pulled over on the side of the road once Trooper Kalb reached the vehicle. Ex. 1. Trooper Kalb testified Defendant initially said he was in a rush because the car

1

was about to run out of gas. *Id.* Trooper Kalb also testified that Defendant provided him with a driver's license, but he did not have the rental agreement showing he could lawfully operate the vehicle. The glove box contained a vehicle registration card for the rental company, but that only showed the rental company owned the vehicle. Trooper Kalb then had Defendant join him in his patrol vehicle. *Id.*

While in the vehicle, Trooper Kalb and Defendant discussed various topics, including travel. *Id.* Trooper Kalb told Defendant he was going to give him a break and write the citation for driving 75 mph in a 70-mph zone even though Defendant had been going 92 mph. *Id.* Meanwhile, Defendant called his girlfriend and asked her to send the rental agreement. *Id.* Defendant showed Trooper Kalb text messages containing an email confirming a rental reservation with Avis Rental Car, his car insurance, and further information regarding the rental. Ex. A. However, these text messages said the vehicle was supposed to be a Ford Mustang Coupe or similar, not the Black Chrysler 300 that Defendant was driving. *Id.* The texts also said the vehicle was to be returned October 8, 2020, four days before the stop occurred. *Id.* Trooper Kalb again asked for the actual rental agreement. Ex. 1.

Trooper Kalb finished issuing the citation but had not received the rental agreement. *Id.* While he was waiting, Trooper Kalb testified he went to look at the fuel level in Defendant's car because they were approximately 20 miles from the nearest gas station and he intended to arrange to have fuel delivered, if necessary. When Trooper Kalb went to check the fuel level, he testified to asking Mr. Dickerson to check the fuel reading. As can be seen from the dash camera footage, Mr. Dickerson leaned over from the passenger seat to see the menu and check the fuel level. Ex. 1. Trooper Kalb testified it was at that point when he noticed what he believed to be a nugget of marijuana on the seat. Mr. Dickerson then exits the vehicle and

Trooper Kalb reaches inside it. Ex. 1. Trooper Kalb testified that he showed Mr. Dickerson the substance and asked if it was marijuana; Mr. Dickerson confirmed it was marijuana. The dash camera footage shows Trooper Kalb reaching back into the vehicle; he testified he placed the marijuana back on the seat where he found it. *Id.* After patting down Mr. Dickerson, he returned to the patrol vehicle to inquire about the marijuana with Defendant. *Id.* Defendant said there should not be any more weed in the vehicle and that it must have dropped. *Id.* Trooper Kalb then told Defendant he would be searching the rental vehicle. *Id.*

A search of the rental vehicle yielded two baggies containing 917 grams of methamphetamine. ECF No. 38 at 5. Special Agent Jason Ruby was called as part of the investigation, and he testified to photographing the rental vehicle after it was towed to the Wyoming Department of Transportation Office. Utilizing the photographs, Special Agent Ruby explained one of the seats had a substance that was green and leafy, with obtuse angles. Ex. 2 & 3. Based on his experience and training, he believed it to be marijuana.

Defendant and his passenger were later charged with possession with intent to distribute methamphetamine and conspiracy to distribute methamphetamine. ECF No. 1. He filed the current Motion on March 3, 2021. ECF No. 33.

### APPLICABLE LAW

Defendant contends he was unlawfully seized during the traffic stop. A traffic stop is considered a seizure under the Fourth Amendment. *United States v. Pettit,* 785 F.3d 1374, 1379 (10th Cir. 2015). It "generally must last no longer than is necessary to effectuate the purpose of the stop." *United States v. Cash,* 733 F.3d 1264, 1273 (10th Cir. 2013). Courts first determine "whether the officer's action was justified at its inception." *United States v. Davis,* 636 F.3d 1281, 1290 (10th Cir. 2011). If the answer is yes, then courts determine "whether the

resulting detention was reasonably related to the circumstances that justified the stop in the first place." *Id.* During a routine traffic stop, an officer may "request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate." *United States v. Rosborough,* 366 F.3d 1145, 1148 (10th Cir. 2004). Authority for the seizure ends when the officer completes, or "reasonably should have [] completed," the tasks tied to the traffic infraction. *Rodriguez v. United States,* 575 U.S. 348, 354 (2015).

Law enforcement also searched Defendant's vehicle without a warrant. Warrantless searches are "presumptively unreasonable under the Fourth Amendment and therefore invalid unless [they] fall[] within a specific exception to the warrant requirement." *United States v. Polly,* 630 F.3d 991, 996 (10th Cir. 2011). The Government must prove its warrantless searches were valid by a preponderance of the evidence. *United States v. Finefrock,* 668 F.2d 1168, 1170 (10th Cir. 1982).

## DISCUSSION

### A. Arguments

Defendant does not dispute the basis of the stop was speeding. ECF No. 33 at 7. However, Defendant argues he was unlawfully seized, and all evidence law enforcement obtained was a result of the unlawful seizure. *Id.* at 1. He claims he provided Trooper Kalb with a valid driver's license, insurance information, and a reservation confirmation demonstrating he was entitled to operate the rental vehicle. *Id.* at 7. Further, Defendant says the information in the glove box proved he was entitled to operate the vehicle. *Id.* at 5, 7. After Trooper Kalb officially issued the citation, the stop should have ended, according to

4

Defendant. *Id.* at 6. Trooper Kalb should not have returned to the rental vehicle, required the passenger to exit the vehicle, or reached inside the vehicle. *Id.* at 6, 9.

In addition to the seizure issue, Defendant also raises inconsistencies regarding when Trooper Kalb actually saw the marijuana; his affidavit said he saw it when he leaned over to check the fuel level, but he also said he saw it when Mr. Dickerson stood up. *Id.* at 6-7. Further, Trooper Kalb allegedly failed to photograph or take the marijuana into evidence. *Id.* at 9. Defendant also takes issue with law enforcement's alleged failure to document the papers from the glove box. *Id.* at 5.

The Government argues there was no unlawful seizure because the stop was lawful, and the length was reasonable. ECF No. 38 at 7. Trooper Kalb was entitled to wait for Defendant's rental agreement, according to the Government. *Id.* It contends Trooper Kalb saw the suspected marijuana while he was still waiting to see the rental agreement, and after that point he had probable cause to search the vehicle. *Id.* at 8. In response to Defendant's statement that there were no photographs of the marijuana, the Government claims it provided photographs in discovery. *Id.* at 9.

### B. Court's Analysis

Trooper Kalb did not unlawfully seize Defendant. He initiated the stop because Defendant was speeding; this is not contested. So, the initial contact was clearly justified. The real issue is whether Trooper Kalb unconstitutionally extended the traffic stop, which resulted in the recovery of drugs.

Both the dash camera footage and Trooper Kalb's testimony reflect the fact he did not receive a copy of the vehicle's rental agreement prior to finding marijuana. "[A]n officer may detain a driver until assured that the … driver is legitimately operating the vehicle." *United*

*States v. Jones,* 44 F.3d 860, 872 (10th Cir. 1995). Defendant provided Trooper Kalb text messages showing the rental reservation. Ex. A. He notes that the papers he showed Trooper Kalb in the glove box were not documented. ECF No. 33 at 5. Thus, the Court can only rely on the testimony and dash camera footage to determine the glove box only contained a vehicle registration card for the rental company, but not the rental agreement.

Trooper Kalb testified that there was a vehicle registration card for the rental company in the glove box, but it was not a rental agreement. The ensuing events on the dash camera footage corroborate Trooper Kalb's statement; they discuss who Defendant can call to get the rental agreement, and Trooper Kalb explains it is procedure with rental vehicles to check the rental agreement. Ex. 1. Defendant claims he thought the documents in the glove box were sufficient. ECF No. 33 at 5. But it is irrelevant what Defendant thought; Trooper Kirlin was entitled to assure himself that Defendant was lawfully in possession of the vehicle, and the documents in the glove box were not enough.

None of the text messages containing the rental information were enough either. This information said he had rented a Ford Mustang Coupe or similar vehicle. Ex. A. However, Defendant was driving a Black Chrysler 300. Ex. 1. The dates on the documentation said the vehicle was to be returned on October 8, four days prior to the traffic stop. Ex. A. The text messages and the information in the glove box did not fully assure Trooper Kalb that Defendant was entitled to be operating that specific rental vehicle on that specific date. Trooper Kalb's detention of Defendant, while he obtained an image of the actual rental agreement, was reasonably related to the tasks involved in a routine traffic stop.

While detaining Defendant to verify he was entitled to operate the vehicle, Trooper Kalb went back to the rental vehicle and saw what he believed was marijuana. His testimony

and the dash camera footage both reflect Trooper Kalb's reasoning for returning to the vehicle. Defendant had pulled over and told Trooper Kalb he was about to run out of gas; the vehicle was approximately 20 miles from the nearest gas station, and Trooper Kalb wanted to ensure Defendant would not be stuck on the side of the road. Trooper Kalb testified it is part of his duties to ensure the safety of motorists on the side of the highway; this includes assisting motorists who have broken down on the side of the road. If Defendant had run out of gas on the side of the highway, it would have been Trooper Kalb's duty to help him. Further, checking the fuel level was reasonably related to the traffic stop because Defendant raised this issue when he explained why he was in a rush.

Once he returned to the vehicle, Trooper Kalb saw what he believed to be marijuana based on his training and experience. In the dash camera footage Trooper Kalb is seen looking into the vehicle; Mr. Dickerson is seen leaning over to check the fuel level. Ex. 1. Defendant claims Trooper Kalb's story is inconsistent because his affidavit said he saw the marijuana when he leaned over to check the fuel level, but he told Mr. Dawson he saw the marijuana when Mr. Dickerson stood up. ECF No. 33 at 6-7. Trooper Kalb testified to seeing the marijuana when Mr. Dickerson leaned over to check the fuel level. Although there may have been some confusion in his explanation to Mr. Dawson, the dash camera footage corroborates Trooper Kalb's explanation in his affidavit. It shows Mr. Dickerson leaning over as Trooper Kalb looks inward, and then Mr. Dickerson exited the vehicle. Ex. 1. Defendant did not provide Trooper Kalb definitive proof he was entitled to be operating that specific vehicle on that specific date when the marijuana was observed in the vehicle.

Although it was conducted without a warrant, the search of the vehicle falls within the vehicle exception to the warrant requirement. This exception applies, permitting a search, "[i]f

there is probable cause to believe [the] vehicle contains evidence of criminal activity." *Polly*, 630 F.3d at 999. Trooper Kalb saw the marijuana within plain view while looking into the vehicle as Mr. Dickerson checked the fuel level. Mr. Dickerson admitted the substance was marijuana. Trooper Kalb went back to the patrol vehicle to discuss it with Defendant and effectively confirmed it was marijuana; Defendant said there should not be any weed in the vehicle anymore and it probably had dropped. Ex. 1. Marijuana is illegal in Wyoming and Trooper Kalb saw what appeared to be marijuana in the vehicle; Mr. Dickerson and Defendant both effectively confirmed it was marijuana. Thus, he had probable cause to believe the vehicle may contain further evidence of criminal activity, specifically illegal drugs. When there is probable cause to search a vehicle, law enforcement, can search "any area of the vehicle in which the evidence might be found." *Id.* Because the drugs could have been found in virtually any area of the vehicle, law enforcement was entitled to search the vehicle as they did.

Defendant also took issue with the lack of photographs and documentation of the marijuana. ECF No. 33 at 9. However, Special Agent Ruby testified to photographing the marijuana in the car seat, and the Government provided photographs to Defendant. Trooper Kalb testified he grabbed the nugget after Mr. Dickerson exited the vehicle and showed it to him, then he placed it back on the seat where he found it. The dash camera footage appears to confirm this, as Trooper Kalb can be seen reaching into the vehicle and grabbing something, then briefly reaching back into the vehicle after showing it to Mr. Dickerson. Ex. 1. Further, Defendant did not raise any arguments that the evidence should be suppressed because of a failure to retain the marijuana as physical evidence; so, the Court need not go any further in addressing this issue.

The search and seizure were both lawful. Trooper Kalb was entitled to wait for proper documentation to assure himself Defendant was entitled to operate that specific vehicle on that specific date. Defendant was unable to produce such documentation prior to Trooper Kalb finishing the speeding citation. While waiting, Trooper Kalb went to check the fuel levels because Defendant said they were about to run out of gas. This was reasonably related to the scope of the traffic stop and Trooper Kalb's duties for motorist safety. At that point Trooper Kalb saw what he believed to be marijuana; Mr. Dickerson and Defendant confirmed his suspicions. Probable cause to search the vehicle for other illegal drugs arose with Trooper Kalb's observations of the marijuana bud on the car seat.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendant's Motion to Suppress Evidence. ECF No. 33.

Dated this 19th day of April, 2021.

Alan B. Johnson
United States District Judge